## Maute *versus* Gross.

1. Evidence is admissible to show that a material stipulation in a written agreement was founded on the misrepresentations and fraud of one of the parties.

2. The plaintiff agreed to deliver to defendant oil of a *specified* quality in payment of a judgment, and produced a sample in a bottle, which he assured defendant was of the quality. A written agreement was then drawn for the delivery of "oil of the quality of the sample." Such oil was delivered. *Held*, that the defendant might show that the oil was not of the quality the plaintiff agreed to deliver:

3. The court charged that in a sale by sample, "where the adoption of a sample has been fraudulently procured, the party who has practised such fraud should not complain if he is denied any advantage of his wrong." *Held* not to be error.

November 9th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Allegheny county:* No. 18, to October and November Term 1867.

The proceeding in the court below was a feigned issue on a judgment, in which Jacob A. Maute was plaintiff and George Gross defendant. On the 10th of May 1866, a suit was pending between the parties in this case. On that day Maute, who was defendant, withdrew his affidavit of defence, and confessed judgment to Gross for $1050, with stay of execution for fifteen days from the date. At the same time the parties entered into the following agreement:—

"And now, May 10th 1867, the defendant having confessed

[Maute v. Gross.]

judgment to the plaintiff in the sum of $1050 and costs, with stay of execution for fifteen days from this date, the plaintiff, in consideration thereof, agrees to accept and receive from said defendant at defendant's manufactory, in Ross township, sixteen barrels of good lubricating oil, of the quality of a sample this day placed in the custody of J. F. Slagle, Esq., in full payment of said judgment, if delivered within fifteen days, said oil so delivered or tendered shall operate as a satisfaction of the said judgment, except the costs; and upon delivery of said oil and the payment by the defendant of said docket costs, the plaintiff agrees to enter satisfaction on the record of said judgment. The oil to be delivered in barrels, and the barrels to be returned to defendant."

On the 1st of June, Gross issued execution on the judgment. On the 2d of June, Maute obtained a rule to show cause why the execution should not be set aside and the judgment marked satisfied. The rule was afterwards discharged, and an issue in which Maute was made plaintiff and Gross defendant was ordered, to try " whether fraud and deception had been practised on defendant, in substituting a different kind of oil as a sample for that which was agreed upon." On the trial, the issue was amended by adding the question, whether the judgment had been paid.

It appeared from the testimony of Maute's witnesses, that he delivered sixteen barrels of " Smith's Ferry crude oil" at G. Maute's store about the middle of May, and that Gross directed where it should be put; that the oil delivered was worth about 16 cents per gallon. It was admitted that the oil delivered was the same as the sample deposited with Mr. Slagle.

Under objection and exception, Gross gave evidence by S. M. Ott, that when the suit was pending between the parties in May 1866, at the instance of Maute, he proposed a compromise. Witness further testified:—" The parties agreed to compromise for certain oil, to be delivered; lubricating oil, of Maute's own manufacture; no particular quality of lubricating oil; there were conversations about the House of Refuge, Lake Superior Iron Works, and the several establishments Maute had been accustomed to deliver oil to; Maute said the oil was worth $60 to $65 per barrel; I was not present when the matter was closed up; Maute was engaged in the manufacture of oils; his works were down at Wood's run; * * * it was the understanding all around, that it was to be Maute's own manufacture; it was understood that it was to be of the value of $65; I asked Maute what his oil was worth, and he said it was worth from $1.25 to $2 a gallon; I have a distinct recollection that the oil was to be an equivalent for the judgment, $900 to $1000."

Gross also examined J. F. Slagle, Esq., who under objection and exception testified:—

[Maute *v.* Gross.]

" At the time the case was on for trial, on the 9th May 1866, there was an offer of compromise made; the offer was to give fifteen barrels of lubricating oil; I understood it to be lubricating oil of Maute's manufacture; the agreement was finally, that the oil should be delivered as soon as Mr. Maute could make it; it was the understanding that the oil should be of the quality delivered to the House of Refuge; we then went to Mr. Brown's office, for the purpose of closing the matter up; Mr. Brown, Maute, Gross and I went to Mr. Brown's office.

" We agreed to take a judgment for $1050 against Maute, with stay and execution for fifteen days, and to enter into an agreement to satisfy the judgment if Maute delivered sixteen barrels of oil in fifteen days, according to the contract. Mr. Brown wrote out the confession of judgment, and commenced writing the article of agreement. After writing a portion of it, he asked how the oil was to be described. I told him to call it good lubricating oil, and think I added of Maute's own manufacture. Maute said, there may some question or difficulty arise as to the quality of the oil to be delivered, and I would rather have a sample. Mr. Gross said ' there need be no difficulty; just give me such as you gave the House of Refuge.' Mr. Brown, I think, suggested that it would be better to have the sample. I objected, that Mr. Maute could not get the sample in time; that the matter must be closed that evening, in order that we should know whether to bring back our witnesses or not. Mr. Maute said there was a man down town to whom he had given some of that oil, and he thought he could get it in a few minutes; started away, and said he would be back in a few minutes. He returned in a short time with this vial of oil. In the mean time Mr. Brown had written the agreement, which was afterwards signed. Maute said, ' the man I went to see was not in, but I found some at another place of a little better quality.' Mr. Gross took the bottle and looked at it, and remarked, ' I don't think that is very good.' Maute replied, ' there, that is what I told you; if he (Gross) would not be satisfied with that, he would not be satisfied with anything.' Maute said, ' this (referring to the sample) is the best oil I make, and is worth $1.80 per gallon'; to which Mr. Gross replied, ' may be it is right, and I will take it.' The article was then signed, and Maute said he would deliver it as soon as he could get it ready. Mr. Brown advised him to do it at once. The article was drawn up, referring to sample before the sample was brought in. The agreement was drawn up and signed on the 9th. It was dated the 10th, so as to correspond with the judgment, which was to be entered in open court on the next day, the 10th. The agreement for confession of the judgment, and agreement for delivery of the oil in satisfaction of the judgment, were executed at the same time— were regarded as one transaction. It was understood that the

[Maute *v.* Gross.]

standard was to be the sample. The sample was placed in my care.. Before we left the court-house, the arrangement as to the number of barrels of oil, time of delivering, quality and kind of oil, was made. It was agreed that the oil should be delivered at Maute's place in two weeks. The parties were brought together by Mr. Ott. Maute said he would deliver the oil as soon as he could manufacture it."

Gross also gave evidence that he served a written notice on Maute ; that he would not receive the oil as it was not the quality he was to get ; and told Maute also that the barrels were not full.

The plaintiff, Maute, submitted a number of points to the court, which, with their answers by Sterrett, P. J., are as follows :—

1. Where goods are sold on inspection, there is no standard but quantity, and no warranty other than that the identical goods sold shall be delivered, and when personal property is sold by sample the same rule prevails.

Answer : " As a general proposition this is correct, but you should determine from the evidence, whether the sample was introduced by Maute, and falsely represented to be of his own manufacture, and whether Gross, relying not on his own judgment from inspection, but relying on the declaration and representation of Maute, agreed to adopt the sample as a test of the kind of oil they have agreed upon. If you find such to be the fact, your verdict on this point should be in favor of Gross."

2. Where property is sold by *sample*, the *sample*, and not the name or other description by which the property is designated, is the sole standard by which the property is to be tested.

Answer : " This proposition is correct. But where the adoption of a sample has been fraudulently procured, the party who has practised such fraud should not complain if he is denied any advantage of his wrong. The fact, or one of the facts, which you are to determine from the evidence, is whether fraud or deception was or was not practised by Maute in procuring the adoption of the sample in question."

3. The test as to the kind and quality of the oil which Maute agreed to deliver to Gross, is the sample placed in the custody of J. F. Slagle, Esq., defendant's attorney, and if the jury believe from the evidence, that the plaintiff delivered to the defendant within the time fixed by the written contract, sixteen barrels of oil of the kind and quality of said sample, the jury should find in favor of the plaintiff, Jacob A. Maute.

Answer : " This proposition is affirmed, provided you find that the adoption of the sample in question was not fraudulently procured by Maute."

4. It is immaterial whether the oil delivered by plaintiff to defendant was or was not lubricating or manufactured oil, provided

[Maute *v.* Gross.]

that it was oil of the kind agreed upon by the parties and identified by the sample, being in kind the same as the sample.

Answer: "This point is affirmed, with the qualification contained in the answer to the 1st, 2d and 3d points."

5. The parol evidence offered by defendant is not sufficient to set aside the written agreement given in evidence.

Answer: "This point is refused. The issue we are trying is to determine certain facts for the information of the court. How these facts, when determined by you, may be applied, is a matter we will not now consider. If the transaction as to the production and adoption of the sample was fraudulent on the part of Maute, as alleged by the other party, it is competent to show that it was by parol evidence."

6. That if the defendant is entitled to recover in this issue, the rule of damages is the difference between the value of the oil delivered and the market value of good lubricating oil, at the time fixed for delivery.

Answer: "This point is refused. Unless you find that Gross accepted the oil claimed to have been delivered, he was not bound to accept any other kind of oil than that agreed upon. But if Gross accepted or received any oil from Maute, the latter should have a credit on the judgment to that extent."

The defendant's point, and the answer of the court, were:—

If the sample furnished by Maute was represented as lubricating oil of his own manufacture, and was so understood by Gross at the time he signed the agreement; and if the sample was not of his manufacture, and was known by Maute not to be his manufacture; and if the oil delivered to Gross was of the same kind as the sample, but inferior in price and quality to lubricating oil of Maute's manufacture, then he was guilty of a fraud, and the verdict of the jury should be for defendant.

Answer: "If the jury find that Gross relied upon the representations of Maute, and not upon his own judgment, the point is affirmed, with the qualifications contained in the general charge."

The verdict was for the defendant in the issue, and the court directed the sheriff to proceed with the execution.

Maute took out a writ of error, and assigned for error: dismissing the rule to set aside the execution; directing the issue to try the question of fraud instead of the question, whether Maute had performed his contract; directing the sheriff to proceed with the execution; admitting the evidence of Ott and Slagle; and the answers to the points.

*J. Barton,* for plaintiff in error, cited Rick *v.* Kelly, 6 Casey 529; Roth *v.* Crissy, Id. 145; Summers *v.* Ritchie, note to Id. 147; Weimer *v.* Clement, 1 Wright 147; McFarland *v.* Newman, 9 Watts 55; Carson *v.* Baillie, 7 Harris 375; Lord *v.* Grow, 3

Wright 88; Fraley v. Bispham, 10 Barr 320; Wetherill v. Neilson, 8 Harris 448; Matthews v. Hartson, Pitts. Leg. Jour. Sept. 15th 1867.

J. F. *Slagle*, for defendant in error, cited Stauffer v. Young, 3 Wright 455.

The opinion of the court was delivered, November 14th 1867, by

THOMPSON, J.—The exceptions in this case arose on the trial of an issue ordered by the court below, to try "whether fraud and deception had been practised on the defendants, in substituting a different kind of oil as a sample for that which was agreed upon;" "and, whether judgment No. 452, March Term 1866, had been paid."

The testimony objected to by the plaintiff in error and plaintiff in the issue, was not offered to enlarge, contradict or alter the instrument of writing of the 10th of May 1867, between the parties; but simply to show that a material stipulation therein was founded on the misrepresentation and fraud of the plaintiff. This was proper. Fraud in a contract could never be proved, if its terms were held to preclude all other evidence in regard to it. A fraudulent scrivener might, if such a rule prevailed, write a very different contract from that agreed upon by the parties; and if they affixed their signatures to it, the fraud would be an accomplished fact. It is too well settled that this is not the rule to justify any reference to authorities.

The fact seems undisputed, that the oil which the plaintiff agreed to deliver to the defendant in payment of the judgment, was to be oil of his own manufacture, of the kind that had been furnished by him on former occasions to the House of Refuge; and to the Lake Superior Iron Works in this city.

When the contract was being reduced to writing the scrivener inquired how he should designate the oil. After some conversation, the plaintiff proposed to procure a sample from a party who he alleged had some of his oil, and left for that purpose. He returned in a short time with a bottle containing oil, which the defendant remarked did not look like the oil he had seen of his manufacture. The plaintiff replied it was, and referring to the sample said it was the best he made, and worth $1.80 per gallon. The agreement had been written, referring to the sample, while plaintiff was absent. After this conversation the parties signed the agreement. The testimony objected to showed all this; and that the sample was not of manufactured, but of crude oil, worth not over 16 cents per gallon, instead of $1.80, as represented. Supposing that the writing closed the door against inquiry, the plaintiff, within the time stipulated, delivered the number of barrels of oil agreed upon according to the sample, and claimed a

[Maute *v.* Gross.]

satisfaction of the judgment which was to be paid in oil. If these facts were true, and the jury have found they were, it would be a very deficient system of jurisprudence which would forbid them to be proved. They went directly to establish a most unmitigated trick and fraud. No such system exists here. The testimony was very properly admitted.

There are numerous assignments of error to the charge, and they principally relate to the law of sales by sample. The court was requested in the plaintiff's 2d point to charge that, " when property is sold by sample, the sample, and not the name or other description by which the property is designated, is the sole standard by which the property is to be tested."

The answer of the learned judge to this was all that the law required, and was sufficient for the case. He said : " This proposition is correct. But when the adoption of a sample has been fraudulently procured, the party who has practised such fraud should not complain if he is denied any advantage from his wrong. The fact, or one of the facts which you (the jury) are to determine from the evidence is, whether fraud or deception was or was not practised by Maute in procuring the acceptance of the sample in question."

The question was thus fairly left to the jury on the very point in issue, and was found in favor of the defendant. The jury also found that the defendant's judgment was not paid. There was no error, therefore, in permitting execution to go on the judgment.

The charge was right also in answer to the plaintiff's 6th point. The defendant was not bound to take in payment of his judgment what he never agreed to take. If a different kind of oil was delivered from that agreed to be received, and the plaintiff refused it for that reason, although he may have added others, it was not a credit or payment. Whether he accepted or refused, it was left to the jury with proper instructions looking to either event. The court were right in directing the issue, and in all their rulings on the trial.

Judgment affirmed.